**FILED**

**August 11, 2017**

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 2:11 PM



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## COURT OF WORKERS' COMPENSATION CLAIMS
### AT MURFREESBORO

| | |
|---|---|
| **Carolyn Clayton** ) | **Docket No.: 2016-05-0634** |
| Employee, ) | |
| v. ) | **State File No.: 48238-2016** |
| ) | |
| **Speedway, LLC** ) | |
| Employer, ) | **Judge Robert Durham** |
| **And** ) | |
| ) | |
| **Old Republic Insurance,** ) | |
| Insurance Carrier ) | |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS AND DENYING TEMPORARY PARTIAL DISABILITY BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on July 27, 2017, upon Carolyn Clayton's Request for Expedited Hearing (REH) to determine compensability of her alleged work-related left knee injury. The dispositive issue is whether Ms. Clayton suffered an aggravation or exacerbation of her left meniscus tear that arose primarily out of and in the course and scope of her employment with Speedway. If so, a secondary issue is whether Ms. Clayton is entitled to temporary disability benefits.

The Court holds that Ms. Clayton is likely to prove her left meniscal tear was primarily exacerbated by a work-related accident on May 16, 2016. Thus, she is entitled to medical treatment for the meniscal tear only. However, Ms. Clayton did not prove the extent of her physical limitations and resulting disability by expert medical testimony. Therefore, her request for temporary disability benefits is denied at this time.

**History of Claim**

1

Ms. Clayton worked for Speedway convenience store in its cafe, primarily as a food-prepper, Mondays through Wednesdays in six-hour shifts.[1] Her duties entailed replenishing the cafe with food from the freezer and pantry, removing stale items, and general cleaning activities. Ms. Clayton stated she could not work more than part-time due to multiple health problems, primarily low back pain and multi-joint arthritis, as well as diabetes and a possible stroke in 2015.

Ms. Clayton testified she was pulling forcefully on a stuck cooler door on May 16, 2016, when the applied force opened the door suddenly, causing her to step back and twist her left knee. Deli Manager Sandy Watson asked her what happened because she heard Ms. Clayton yell but did not see the accident. Ms. Clayton told her she hurt her knee opening the cooler door and she needed to call her boyfriend, John White, to bring her a knee brace. Ms. Watson told her to do what she needed to do.

Ms. Clayton testified she called Mr. White from the office and waited there until he arrived with a brace. When Ms. Clayton could not fit the brace on her swollen knee, she clocked out. She told Ms. Watson she planned to visit the emergency room. Ms. Watson again told her to do whatever she felt she needed to do.

Speedway offered video purportedly depicting May 16. It was date-stamped and showed Ms. Clayton carrying items in her right hand to the cooler area, although the cooler is not captured on video. While Ms. Watson is in the picture, she cannot see Ms. Clayton because of shelving. Ms. Watson did not appear to respond to Ms. Clayton's exclamation, but the angle and distance make that unclear, and the video did not record sound. Ms. Clayton was noticeably limping on her left side when she returned from the cooler. (Ex. 24)

A significant portion of the expedited hearing dealt with whether Speedway's video depicted May 16. Ms. Clayton contended most of it was not May 16 but conceded Mr. White is shown bringing in the knee brace. Ms. Clayton contended the video was not filmed May 16 because Jeremy Smith, whom she purportedly saw in the video and whose affidavit claimed he was present that day, did not actually work on May 16. Indeed, Mr. Smith's time records indicated his absence. However, Liz Herald, Speedway's human resources representative, identified the man mistaken for Mr. Smith as "Rob," and his time records showed he worked May 16. Mr. White, who knows Mr. Smith, testified after viewing the video that the man was not Mr. Smith because Mr. Smith is clean-shaven.

Additionally, Ms. Clayton claimed five other discrepancies. Unlike the video's representation, she said she was not carrying any items; the office was empty of people; she stayed in the office rather than returning to work after calling Mr. White; Ms. Watson

[1] The parties stipulated that the compensation rate was $128.20.

responded to her yell; and Mr. White followed her into the store when she clocked out.. .

Ms. Clayton went to Stonecrest emergency room immediately after leaving the store. According to the records, Ms. Clayton reported "she had tore [sic] meniscus a year ago but did not have SX repair due to insurance status." She also reported that her left knee could fully bear her weight until she felt it "buckling" at work that morning. An exam revealed swelling, pain, effusion and limited range of motion. X-rays showed moderate tricompartmental arthritis with trace joint effusion. Ms. Clayton received pain medication and was advised to see a doctor for follow-up.

The next day, Ms. Clayton visited her personal care provider, Linnie Mooneyham, A.P.R.N., who became Ms. Clayton's PCP in 2013. Nurse Mooneyham observed that Ms. Clayton claimed she injured her left knee at work, causing it to swell and buckle. Ms. Clayton described burning pain and required crutches to walk. The record does not state Ms. Clayton injured her knee while opening a stuck cooler door, although Ms. Clayton testified she told this to Nurse Mooneyham.

Nurse Mooneyham took Ms. Clayton off work for the next week and ordered an MRI that revealed moderate effusions, moderate to severe tricompartmental arthritis, a discoid lateral meniscus with a probable tear, and a complex medial meniscal tear. The MRI report also compared the MRI to one taken in 2014 and noted that the meniscal degenerative changes "have progressed." On June 2, Ms. Clayton told Nurse Mooneyham that she had an appointment with an orthopedist on June 20 and brought in paperwork for personal leave. She had yet to make a claim for workers' compensation benefits and did not do so until June 14.

According to Speedway's accident report, Ms. Clayton stated she hurt her knee "walking to the café cooler.". Speedway denied Ms. Clayton's claim on June 20 before she had an opportunity to see an orthopedist.

In August, Ms. Clayton went to Shade Tree Clinic for treatment. The records described the May 16 incident as "she fell at work while operating a heavy refrigerator door. The patient fell backwards and extended her knee, it went out." On cross-examination, Ms. Clayton admitted this was the first time the cooler was mentioned in any document; she also disputed the description that she fell, stating she did not use those words. Dr. James Fiechtl, an internist with Shade Tree, recorded Ms. Clayton's symptoms came from her end-stage arthritis, for which she would likely need a knee replacement, and not her meniscal tears.

Ms. Clayton continued to see Nurse Mooneyham, who completed Speedway Fitness for Duty Forms for Ms. Clayton through December 31, 2016. In the forms, Nurse

3

Mooneyham stated Ms. Clayton needed to see an orthopedist and could only return to work if allowed to use her cane. Ms. Clayton testified she spoke with store manager, Misty Olinger, who told her Speedway did not have any jobs she could perform within her limitations. Ms. Clayton testified that she has not worked since May 16, and she still needs a cane to walk or stand for any length of time.

In addition to the May 16 incident, Ms. Clayton also testified about her medical history regarding her knees. In 2005, she treated for left knee pain while living in Beloit, Wisconsin. The records included x-rays that indicated "incipient arthritis" with no signs of effusion or inflammation. Ms. Clayton testified she received some medication and her symptoms improved. She did not require further medical treatment for her left knee until she went to Stonecrest emergency room in April 2014 after her left knee buckled and twisted while she was rising from the commode.

According to records from that treatment, Ms. Clayton stated she could not bear weight on her left knee and examination revealed mild swelling. An MRI showed "probable medial and lateral meniscal tears" as well as tricompartmental degenerative changes. (Ex. 3). Ms. Clayton testified she missed a few days of work following the incident but eventually recovered. Although her left knee occasionally ached, it did not prevent her from performing her job duties, and she did not seek medical treatment for her left knee again until the May 16 accident. A signed statement from Nurse Mooneyham corroborated Ms. Clayton's testimony, confirming she did not treat Ms. Clayton's left knee from August 2014 through May 2016.

On cross-examination, Speedway introduced a Social Security disability appeal form completed by Ms. Clayton on October 3, 2015. In the form, Ms. Clayton cited myriad health problems, including a possible stroke in 2015, which she asserted prevented her from performing any household chores or cooking any meals. She claimed she could only walk short distances before her legs and back locked up and she couldn't lift, bend, or squat due to "back locking up or knees giving out." Upon questioning by Speedway's counsel, Ms. Clayton admitted she wrote "knees giving out" but stated she primarily meant her back and right knee. Ms. Clayton admitted that Social Security denied her appeal approximately a week before her asserted injury on May 16.

Ms. Clayton also admitted she did not mention the cooler to Ms. Herald when she made her workers' compensation claim in June. She also conceded that, in her deposition, she did not mention telling Ms. Watson she stumbled because the cooler door stuck. Finally, Ms. Clayton acknowledged denying prior problems with her left knee but explained that she meant problems that significantly limited her activities. However, she did occasionally experience aches and pains in both knees prior to May 16.

On re-direct, Ms. Clayton reiterated that her left knee was not swollen when she left for work on May 16. Following Speedway's counsel's efforts to impeach her

4

testimony regarding the various accounts of the incident, Ms. Clayton's counsel offered her hand-written account of the accident attached to the Petition for Benefit Determination filed on July 7, 2016, which was consistent with her testimony at the hearing.

Mr. White, Ms. Clayton's boyfriend of four years with whom she is sharing a home, corroborated Ms. Clayton's account of May 16 and that she did not have any significant issues with her left knee before that date.

For medical proof, Ms. Clayton submitted the deposition of Dr. Blake Garside, an orthopedist upon whom the parties agreed to provide an independent medical evaluation. Dr. Garside examined Ms. Clayton as well as her medical records, including the left knee MRIs taken in 2014 and 2016. Dr. Garside concluded that Ms. Clayton suffered from a "macerated" left medial meniscus that showed significant progression since the 2014 MRI, as well as tricompartmental degenerative changes in her left knee. He testified that, in his opinion, Ms. Clayton's degenerative osteoarthritis is unrelated to the work incident of May 16, but the accident caused an "acute exacerbation" of her left medial meniscal tear. . He felt she suffered an "acute on chronic" event on May 16 that caused further tearing of the medial meniscus, which led to increased symptoms, swelling and the sensation of her knee "giving away." Dr. Garside based this opinion on her account of the May 16 incident; her history of swelling, effusion, and pain immediately following the accident; and his review of the MRIs and other medical records. . He indicated she was not at maximum medical improvement, but he did not provide any testimony with regard to Ms. Clayton's physical restrictions or her ability to work.

On cross-examination, Dr. Garside explained that, given her history, reported complaints of being unable to bear her weight as well as the documented swelling, he believed the May 16 incident resulted in an anatomic change or increased aggravation of the medial meniscus tear. He believed her work accident caused greater than fifty percent of her injury. He recommended injection therapy, and if that didn't work, an arthroscopy for the tear. On re-direct, he reiterated that the accident caused an increased meniscal tear that created the need for his recommended medical care. He further indicated all of his opinions were to a reasonable degree of medical certainty.

Speedway entered the affidavits of Sandra Watson, Jeremy Smith and Misty Olinger as proof during its defense. Mr. Smith stated he worked on May 16 and could be seen in the video. He stated he never had a problem with the cooler door and did not hear Ms. Clayton yell out or scream, although she was limping as she came around the corner. She told him her "knee hurt and she was going home." Ms. Watson also stated she never had an issue with the cooler door and that she never heard Ms. Clayton "yell out or scream in pain." She stated Ms. Clayton told her that her knees hurt and she was going home. She asserted Ms. Clayton often told her that her knees hurt, but she never complained of an incident with the cooler.

Finally, Ms. Herald testified at the hearing, stating she was present when Ms. Clayton entered the office on May 16 and said she needed to call her boyfriend to bring her a knee brace. However, she claimed Ms. Clayton did not say she injured her knee while opening the cooler door. She also testified Ms. Clayton did not say anything about suffering a work-related injury until June 13 when she filed the workers' compensation claim.

## Findings of Fact and Conclusions of Law

As in all workers' compensation actions, Ms. Clayton has the burden to prove the essential elements of her claim. *Scott v. Integrity Staffing Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). However, since this is an expedited hearing, she only has to present sufficient evidence from which the Court can determine she is likely to prevail at a hearing on the merits to meet her burden. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

To prevail, Ms. Clayton must establish that she suffered an accidental injury "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment [and] identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(14)(A) (2016). Ms. Clayton must also prove "to a reasonable degree of medical certainty that [the injury] contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2016). The term "reasonable degree of medical certainty" means that "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D) (2016). Thus, lay testimony must generally be corroborated by expert medical testimony to prove causation. *See Scott, supra,* at *12.

In this matter, Dr. Garside, the only doctor to provide a causation opinion, determined that Ms. Clayton suffered an increased tear in her left medial meniscus that caused swelling, effusion and increased pain and resulted in the need for medical treatment. He further believed that, based upon Ms. Clayton's description, this injury occurred on May 16, 2016, when her left knee buckled as she attempted to pull open a stuck cooler door at work. He provided these opinions within a reasonable degree of medical certainty. The Court finds that Dr. Garside's testimony establishes that Ms. Clayton is likely to prevail in proving causation if she proves the accident occurred as described to Dr. Garside.

It is down this avenue that Speedway defended the claim, attacking Ms. Clayton's credibility primarily on three fronts; that her pre-existing left knee problems were more serious than she told Speedway or her physicians; that her account "evolved" to create a

6

compensable injury; and that her account differs substantially from the surveillance video and Ms. Watson's affidavit. Speedway argues this means she cannot be trusted in other, more relevant, facts regarding her claim.

Regarding her medical history, it is undisputed that Ms. Clayton suffered from occasional aches and pains in her knees, right more than left, since at least 2005, and that she sought treatment for left knee pain on at least two occasions, once in 2005 and then again in April 2014 when her left knee buckled while rising from the commode. The 2014 MRI showed that Ms. Clayton suffered from degenerative arthritis in her left knee as well as some tears in her menisci. However, Ms. Clayton's unrefuted testimony, corroborated by Mr. White and Nurse Mooneyham's statement, indicates she recovered from this incident, went back to work, and did not seek further treatment for her left knee until the May 16 incident when she suffered increased pain, swelling, and effusion. As a result, the Court finds Ms. Clayton's medical history does not impeach her credibility.

As to Ms. Clayton's varying accounts, the Court finds the lack of an initial description in the medical records to be of little weight in determining credibility, and the later descriptions in records, Social Security documentation, and a deposition, while somewhat different in detail, do not vary enough to impeach Ms. Clayton's credibility as to how the accident occurred.

Finally, the Court finds the video depicts events on May 16, 2016, at Speedway. To do otherwise would require finding that Speedway intentionally doctored the video, and there is no evidence of that occurring, nor, given the video's content, is there any discernable reason for them to do so.[2] Given this finding, Ms. Clayton's version of events differs in many respects from what is shown on the video. However, the differences in her recollection and the video are negligible, since the video does not depict the cooler where the incident occurred.

The Court finds Speedway failed to impeach Ms. Clayton's credibility regarding her pre-existing left knee problems and her description of the May 16 incident. Therefore, considering her testimony in conjunction with that of Mr. White and Dr. Garside, the Court holds Ms. Clayton is likely to prove she sustained a compensable injury to her left medial meniscus.

However, the Court finds Ms. Clayton did not provide sufficient evidence to establish her entitlement to temporary disability benefits at this time. Dr. Garside did not provide any opinion regarding Ms. Clayton's physical restrictions. Nurse Mooneyham's opinion was the only evidence offered to prove Ms. Clayton's injury disabled her from working. The Workers' Compensation Appeals Board has held that a nurse practitioner's

---

[2] The Court would note, however, that Ms. Clayton was correct in her assertion that Mr. Smith, despite his affidavit stating otherwise, did not work on May 16.

opinion is insufficient to address causation and that a nurse's signature is not enough to make medical records admissible; a doctor's expertise is required. *See Dorsey v. Amazon.com, Inc.*, TN. Wrk. Comp. App. Bd., LEXIS 13, at *9, (May 24, 2015); *Noel v. EAN Holdings, LLC*, TN. Wrk. Comp. App. Bd., LEXIS 6, at *5, (January 19, 2017). The Court holds Nurse Mooneyham's opinion regarding physical restrictions resulting from Ms. Clayton's work-related injury are likewise insufficient to establish she is likely to prevail on this issue at a hearing on the merits. As a result, Ms. Clayton's request for temporary partial disability benefits is denied at this time.

IT IS, THEREFORE, ORDERED that:

1. Speedway shall provide a panel of orthopedists to Ms. Clayton from which she may choose an authorized physician to provide reasonable and necessary medical treatment for her May 16, 2016 work injury.

2. Ms. Clayton's request for temporary partial disability benefits is denied at this time.

3. This matter is set for a Scheduling Hearing on **September 21, 2017**, at **9:00 a.m. Central Time**. The parties must call 615-253-0010 or toll-free at 855-689-9049 to participate in the hearing. Failure to call may result in a determination of the issues without your further participation.

**ENTERED THIS THE _11_ DAY OF AUGUST, 2017.**

**Robert V. Durham, Judge**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:

1. Nurse Mooneyham's records
2. Shade Tree Clinic records
3. 2017 Stonecrest Medical records
4. Dr. Garside's deposition
5. 2005 medical records
6. Speedway Letter of Denial
7. Mr. Smith's affidavit
8. Speedway Occupational Illness and Injury Report
9. Ms. Olinger's affidavit
10. S.S. Disability Appeal Form

11. Fitness for Duty Forms
12. Dr. Garside's IME report
13. 2004 Medical records
14. Nurse Mooneyham's April 2014 record
15. Stonecrest 2015 records
16. Nurse Mooneyham's March 2015 record
17. Nurse Mooneyham's July 2015 record
18. Nurse Mooneyham's May 10, 2016 record
19. Nurse Mooneyham's May 17, 2016 record
20. Nurse Mooneyham's July 14, 2016 statement
21. Sandra Watson's Affidavit
22. Time records of Speedway employees
23. Social Security Notice of Reconsideration
24. Surveillance video

Technical Record:

1. Dispute Certification Notice
2. Request for Expedited Hearing
3. Ms. Clayton's Witness and Exhibit List
4. Speedway's Witness and Exhibit List
5. Ms. Clayton's Pre-Hearing Brief
6. Petition for Benefit Determination
7. Speedway's Pre-Hearing Brief

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 11th day of August, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|---------------|---------|-----------|------------------|
| Angus Gillis, III | | | X | agillis@slblawfirm.com |
| Allen Callison | | | X | acallison@chartwelllaw.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims

9